VIRGINIA RICHARDS ET AL., Appellants v. IOWA L. MORAN ET AL., Appellees.

**Conveyances:** DELIVERY. Ordinarily title to real property does not
1 pass until there has been a delivery of the instrument of conveyance, either to the grantee or his agent authorized to receive the same for him. In the instant case the husband who was the real owner of the property, without any contract relations with his wife, caused the conveyance to be in her name with delivery of same to him, and it is held that there was no delivery investing the wife with title.

**Action to quiet title:** PLEADING: SUFFICIENCY. The petition in an
2 action to quiet title need not follow the precise wording of the statute; it is sufficient if the plaintiff asserts his absolute title, that defendant is claiming an interest in the property, describing it, which is without merit and asking that his title be confirmed and that defendant's claims be forever barred and cut off; without alleging in express terms that defendant claims adversely to him.

**Original notice:** SUFFICIENCY. The original notice in an action to
3 quiet title must accurately describe the property and in general terms state the nature and extent of plaintiff's claim. In the instant case the notice is held sufficient.

**Judgments:** VACATION FOR FRAUD. A court of equity may vacate a judgment on the ground of fraud practiced in obtaining the same, in an action brought after the time allowed by statute for granting a new trial, but such fraud must be something extrinsic and collateral to the questions examined and determined in the original action; so that falsely representing in a sworn petition in an action to quit title, that plaintiff was the owner in fee of the lands described therein, is not such fraud as will authorize a court of equity to set the judgment aside.

*Appeal from Hardin District Court.*—HON. W. D. EVANS, Judge.

TUESDAY, FEBRUARY 11, 1908.

ACTION in equity to establish and quiet title to real estate. Trial on the merits resulted in a decree in favor of·defendants, and therefrom plaintiffs appeal.—*Affirmed.*

*Dawley, Hubbard & Wheeler, Thos. A. Bogle* and *Huff & Huff,* for appellants.

*Albrook & Lundy,* for appellees.

BISHOP, J.— In February, 1904, Selby B. Moran, late of Hardin county, died testate, and during that year his will was duly admitted to probate in said county. The will nominated Iowa L. Moran, wife of the testator,. to be executrix, and in due time she qualified, entered upon her duties, and still continues to act as such. Among other devises made by the will, there was devised to said Iowa L. Moran title in fee simple to certain lands, particularly described in the petition in this action, and situated in Hardin county, the record title to which lands was standing in the name of the testator at the time of his death. Said testator also left surviving him six children, born to him by a former wife — one daughter, now by marriage Virginia Richards, and five sons, Lee, Frank, George W., Eldon, and Selby A. Moran. Of such children the first four named are plaintiffs

in this action; said Virginia Richards claiming in her own right, and also as assignee of her brother Selby A. Moran. And the said Eldon Moran, having refused to join as a plaintiff, was made a defendant. The action was brought against Iowa L. Moran in her capacity as executrix and individually, and the substantial averments of the petition are that in May, 1861, one Peter Moran was the owner in fee of the real estate in question; that during that month, for a valuable consideration, he sold and by warranty deed conveyed the same to Miranda Moran, then the wife of the testator, and likewise the mother of plaintiffs; that said deed was accepted by said Miranda Moran, and she with her husband, said Selby B. Moran, at once entered into possession of the lands, and so continued down to the date of her death.

It is then alleged that after the execution and delivery of said deed to Miranda Moran the same came into the possession of her said husband for the sole and only purpose of having the same placed and made of record in said county; that said Selby B. Moran, in disregard of the rights of his wife, and with intent to wrong and defraud her and her children, erased from said deed the name "Miranda" wherever the same occurred therein, and inserted in place and stead thereof his own given name; that thereafter, and in the year 1872, and in furtherance of his scheme and purpose to wrong and defraud his said wife and her children, he caused said deed as so changed and altered by him to be placed and made of record in said county. The death of Miranda Moran in October, 1885, intestate, is alleged, and it is said that she died without having acquired any knowledge of the unfaithfulness and fraud on the part of her husband, and believing that he had carried out her instructions respecting the recording of said deed as the same was executed to her. It is then alleged that in furtherance of his intent and scheme to wrong and defraud these plaintiffs the said Selby B. Moran commenced

an action in equity to quiet title to the lands in question in himself, all the children of said Miranda Moran being made parties defendant, and in which action a default decree was entered awarding the relief demanded in the petition therein filed. Of this action and decree we shall speak more in detail in the further course of this opinion.

The marriage of Selby B. Moran to the defendant Iowa L. Moran is then alleged, as also the death of the former in February, 1904, and probate of the will is alleged. Proceeding, plaintiffs say that until the death of their father, said Selby B. Moran, in 1904, they had no knowledge or means of acquiring knowledge of the fraud so committed and concealed by him, and they supposed he was in truth the owner of the lands as disclosed by the deed so by him fraudulently altered and placed of record. And, based on the facts so pleaded, they now assert that their mother, the said Miranda Moran, was seised of title to said lands in fee simple as of the time of her death, and that upon the happening of that event they became clothed with the fee as by descent, and so now hold title to the same. The deed as altered and recorded, the decree in the action to quiet title, and the probate of the will are alleged to constitute clouds upon their title thus derived, and the prayer is for a decree confirming and quieting title in them. The answer of Iowa L. Moran, appearing for herself and as executrix, in addition to a general denial, and among other things, pleads ownership of the lands in controversy in Selby B. Moran at all times up to his death; pleads by way of estoppel that the alteration in the deed from Peter Moran was with the knowledge and acquiescence of Miranda Moran, and that the same was done to make the record title correspond to the true ownership of the property; pleads the action, reference to which is made in the petition, commenced by Selby B. Moran, and the decree entered therein in bar.

I. The trial judge who presided in the court below, in an opinion filed at the time of entering decree, expressed

the view that no title to the land in controversy ever became
vested in Miranda Moran, because under the
circumstances of the case no delivery of the
deed in question had ever been made to her. And in this
view we are disposed to agree. The record is not altogether
clear on the subject; but it seems that the land in con-
troversy was originally purchased by Selby B. Moran, and
that, to avoid the lien of a personal judgment then existing
against him, he caused the title to be taken in the name
of his brother, Peter Moran, a resident of West Virginia.
Further, it seems that the deed in question was prepared
by said Selby B. Moran — at the time living with his wife
Miranda in Hardin county, this state — and that as pre-
pared Miranda Moran was named therein as grantee. There
is nothing in the record tending to show that this was in
virtue of any contract or pursuant to any agreement as
between Selby B. and his said wife. The deed was sent
on to Peter Moran by Selby B., and, on being executed,
was returned to the latter. As far as appears it was thus
held until filed for record. Accepting these as the circum-
stances, there was no delivery to Miranda Moran, and hence
she never became possessed of title to the land.

*1. CONVEYANCES: delivery.*

    We may concede that, if the execution of the deed had
been brought about as the result of contract relations between
Peter and Miranda Moran, or even between the latter and
her husband, Selby B. Moran, a different conclusion might
be dictated. It is easy to see that out of some such situation
the relation of principal and agent as between the husband
and wife might have arisen, so that a delivery to the former
would amount in law to a delivery to the latter. But, as
we have said, the record stops short of anything upon which
to predicate a finding for such relationship. And it is clear
that the burden was on plaintiffs to make the necessary fact
showing.

    Now it is fundamental in the law of real estate that
title does not pass until there has been a delivery of the

instrument of conveyance. And delivery to be effectual must be made to the grantee in person, or to his agent authorized to the purpose. The corollary follows, of course, that delivery to a stranger to the instrument is an idle ceremony and of no effect. True the rule is not in all respects a hard and fast one. But the exceptions where allowed will be found, in each instance as we apprehend, to be based upon some special circumstance — as of dependent relationship, or the like. And, in all such cases, a conclusion for delivery is made to depend upon a finding of intention on the part of the grantor. Thus it has been numerously held that a deed executed by the fee owner in favor of his children, and by him delivered to the proper officer for record, will be given effect to carry title if so intended; otherwise, if proof of intent to part with the title is wanting. *Davis v. Davis,* 92 Iowa, 147; *Erler v. Erler,* 124 Iowa, 726.

In the circumstances of this case, however, an exception to the general rule is not called for. As Peter Moran was possessed of only the naked legal title, his intention is of but little if any importance. The right of disposition was in Selby B. Moran. He might destroy the deed if he chose, and, regarded as an instrument purporting primarily to be executed in favor of his wife, he did destroy it, in effect, when he erased her name appearing therein as grantee. The filing of the deed for record can have no bearing on the question of delivery. The instrument had then been changed and the intention evidenced by the act of filing was to prevent title passing to Miranda Moran.

II. The trial judge, in his opinion filed, went further and expressed the view that the plea in bar should be sustained. And in this conclusion we are wholly disposed to

2. ACTION TO
QUIET TITLE:
pleading:
sufficiency.

agree. We have no occasion to enter upon a general discussion of the subject of former adjudication. In effect, counsel for appellants conceded that but for certain matters of defect and

fraud inhering in the decree pleaded it should be given force to bar the present action. And to the matters pointed out and thus relied upon we may devote our attention. This we shall do in the order in which presented. First, it is said that the petition in the former suit pleaded was insufficient to support the decree, in that said petition did not allege that the parties defendant were claiming adversely to the plaintiff Selby B. Moran, and accordingly that no cause of action was stated. Going to said petition, the allegations are that plaintiff Selby B. Moran is the owner in fee simple absolutely and in possession of the real estate in controversy, describing it; "that the defendants claim to have some interest in or to said described premises, but the plaintiff avers that their claim is without foundation and without right and absolutely unfounded and without merit." And the prayer is that "title in and to said premises be quieted and confirmed in plaintiff, and the pretended interest and claims of defendants be forever barred and cut off." In support of their contention counsel rely primarily on the provision of Code, section 4224, being part of the chapter devoted to actions to quiet title. It is there said that the petition in such an action must describe the property and set forth the nature and extent of plaintiff's estate therein, "and that he is credibly informed and believes the defendant makes some claims adverse to the petitioner, and praying for the establishment of the plaintiff's estate," etc. As we understand, it is not the thought of this statute that in pleading the wording thereof must be followed. If the substance of the matters made essential to a good pleading are stated, it will be sufficient. *Paton v. Lancaster*, 38 Iowa, 494; *Ruppin v. McLachlan*, 122 Iowa, 343. In the petition before us plaintiff alleges his title to be absolute and unqualified. He says that defendants are making claim of an interest in the property, and that such claim is without right or merit. Here was enough. If defendants were asserting an interest in the property to which plaintiff had

perfect title, of necessity their claim was in opposition to his title. It was antagonistic, adverse. And this is true because in the very nature of things their claim could not be established without in a corresponding degree tearing down the asserted title of plaintiff.

It is next insisted that the original notice — served on part of the defendants personally, and on the others by publication — was defective, in that " it did not state in 3. ORIGINAL general terms the cause of action, or show NOTICE: sufficiency. that the defendants made an adverse claim." The notice served is set out in the record, and the statement of plaintiff's claim as therein made is that as owner of the real estate in question — describing it — he prays that title thereto be quieted in him and for general equitable relief; and reference is made to the petition on file. The general statute (Code, section 3514) provides that the original notice shall state in general terms the cause of action, while the special statute (Code, section 4224) provides that the notice shall accurately describe the property, and, in general terms, the nature and extent of the plaintiff's claim. Surely we need not enter upon an extended argument to make it clear that the notice in question was in substantial compliance with the statute.

The third and last matter, and the one principally relied upon, is that the decree in favor of Selby B. Moran was procured by fraud, and for that reason should be treated 4. JUDGMENTS: as void and canceled. Under our statute vacation for fraud. (Code, section 4091) a judgment or decree may be vacated, among other causes specified, for fraud practiced in obtaining the same. In seeking to have the decree set aside, plaintiffs do not count upon the statute. They seek to justify their failure to attack the decree within the time limited by the statute by pleading that the fraud relied upon was not discovered in time, and their appeal is to the general equitable powers of the court. But we have repeatedly held that the jurisdiction of a court of

equity in such cases is limited to the granting of relief on the grounds enumerated in the section of the Code to which we have made reference *Lumpkin v. Snook,* 63 Iowa, 515; *McConkey v. Lamb,* 71 Iowa, 636; *Larson v. Williams,* 100 Iowa, 110; and where relied upon as the sole ground for setting aside a judgment or decree, " the fraud . . . must be something extrinsic and collateral to the question examined and determined in the action." Accordingly false swearing or perjury is not, within the meaning of the statute, such a fraud as to justify the setting aside of a judgment obtained thereby. *Graves v. Graves,* 132 Iowa, 199; *Mahoney v. Insurance Co.,* 133 Iowa, 570. See also *Wood v. Wood,* 136 Iowa, 128. The subject-matter is so fully gone over in the cases cited, and the conclusion reached so definitely pronounced, that we shall not prolong this opinion by any further discussion of the subject. The matter of fraud relied upon in the case now being considered consisted solely in falsely representing to the court, through the medium of the sworn petition filed, that the plaintiff Selby B. Moran was the rightful owner of the fee title to the lands which were the subject of the action. The case is therefore clearly without the rule of the statute.

The conclusions expressed foregoing are sufficient to dispose of the appeal, and we need not concern ourselves with any other questions presented in argument. The decree appealed from is *affirmed.*