W. G. JOOR, Appellant, v. JOHN C. JOOR et al., Appellees.

No. 44891.

JANUARY 9, 1940.

R. W. Zastrow, for appellant.

Douglass & Douglass and Korf & Korf, for appellees.

MILLER, J.—Plaintiff and defendant, John C. Joor, are sons of one P. Joor, deceased, and were co-executors of his estate. Plaintiff's petition alleges that a note for $3,000, secured by a chattel mortgage, was executed by defendants, husband and wife, and delivered to the decedent; that P. Joor died on August 19, 1931, his will was admitted to probate in Story

County, Iowa, but the note was not listed as an asset of the estate; that under the will plaintiff is entitled to one half of the amount due on the note, and the defendant John C. Joor is entitled to a credit of one half of the amount due. A copy of the will is attached to the petition, and, throughout the petition, it is asserted that plaintiff's ownership of the note arises by virtue of the provisions of the last will and testament of P. Joor, deceased. Plaintiff prays for judgment on the note and foreclosure of the mortgage.

In the defendants' answer, it is alleged that, if the note was or is in existence, it constituted property of P. Joor at the time of his death, but was not inventoried, and no claim was based thereon in the estate; that plaintiff, as one of the co-executors of the estate, under oath executed an inventory and a final report wherein plaintiff asserted that all property belonging to the estate and coming into the hands of the executors had been inventoried and accounted for; that, upon presentation of the final report, the same was approved and the estate closed; that the proceedings in the probate court constitute an adjudication against the contentions of the plaintiff and the plaintiff is now barred and estopped from claiming any interest in the indebtedness alleged in the petition; that plaintiff failed to attack the adjudication by a showing that the property was accidentally or fraudulently withheld from the estate, and is not now entitled to pursue the alleged property or prove any interest therein.

At the trial, the evidence showed that the plaintiff and the defendant John C. Joor were co-executors of the estate. The inventory, filed by them as such executors, was introduced in evidence. It was verified and did not list the note as an asset of the estate. The final report, filed by said executors, was introduced in evidence. It was signed and verified by both of the executors. It recites, "All property belonging to said estate, and which has come into their hands as executors has been disposed of as directed by the Court, and the estate is now ready for final settlement and distribution." The order approving the final report was introduced in evidence. It recites that the report came on for hearing after due notice to all parties interested in the estate. The adjudication of the court is as follows: "Wherefore, it is considered by the court that said

report is true and correct, and the same is hereby approved, the executor is discharged and his bond exonerated.''

There is no allegation in the petition that the defendant was guilty of any fraud as against the plaintiff in failing to inventory or assert the note as an asset of the estate. There is no claim of mistake. The plaintiff testified to knowledge of the existence of the note at the time he executed the inventory and the final report, in each of which instruments the note is not included, and he stated under oath in the final report that all of the property of the estate in the hands of the executors had been fully accounted for.

The trial court found and determined that the plaintiff neither alleged nor proved any fraud, mistake or omission in pursuing the controversy in the probate court, that the estate of P. Joor was administered and the evidence affirmatively shows that the plaintiff, who was a co-executor in said estate, had knowledge of the existence of said alleged note long prior to the settlement of the estate, and failed to show to the court any equitable grounds for relief as provided by statute; that, by reason of the report, plaintiff's receipt for his distributive share, and the order of final discharge in said estate, the plaintiff is estopped from claiming any relief in equity concerning the alleged asset of said estate, is not entitled to a decree, and the cause was dismissed. Other matters are determined in the decree which it is unnecessary for us to discuss or decide. Plaintiff appeals from such decree.

Section 12049 of the Code provides as follows:

''Mistakes in settlements may be corrected in the probate court at any time before his final settlement and discharge, and after that time by equitable proceedings, on showing such grounds as will justify the interference of the court.''

This statute has been repeatedly construed by this court and, under the rules adopted by us in such construction, it appears that the trial court correctly decided this case.

As above pointed out, plaintiff asserts ownership in a one-half interest in the note by virtue of the fact that the note constituted property of P. Joor at the time of his decease, that, under the will of said decedent, plaintiff was given a one-half interest in the estate, that the estate has been fully administered and, accordingly, plaintiff's one-half interest in the note

is not subject to any debts of the decedent or costs of administration. Plaintiff bases his claim herein squarely on the proposition that he is a legatee under the will of P. Joor, deceased, that this property was an asset of the estate and that his title should be enforced by a court of equity on such basis. The contentions now made are in direct opposition to the adjudication in the probate proceedings. It was there determined that all property belonging to the estate has been fully accounted for. This note was not reported as property belonging to the estate. The adjudication on the final report was that such report is true and correct. The claim now made is that the report was neither true nor correct. We are of the opinion that, before the claims of the plaintiff asserted herein could be decided in his favor, it was necessary to attack the adjudication in the probate proceedings and, since this was not done, the trial court correctly decided this case.

In the case of Becker v. Becker Bros., 202 Iowa 7, 11, 209 N. W. 447, 450, we state:

"It is likewise true that the final report of an executor which has been approved, and the executor discharged, will be set aside only upon a clear and satisfactory showing of fraud, mistake, or other equitable grounds therefor. Patterson v. Bell, 25 Iowa 149; In re Estate of Douglas, 140 Iowa 603 [117 N. W. 982]; Tucker v. Stewart, 121 Iowa 714 [97 N. W. 148]; Read v. Howe, 39 Iowa 553; Daniels v. Smith, 58 Iowa 577 [12 N. W. 599]."

Again, in the case of Bradbury v. Wells, 138 Iowa 673, 677, 115 N. W. 880, 882, 16 L. R. A., N. S., 240, we state:

"The matter complained of must be something *extrinsic* or *collateral* to the matter tried upon the original hearing, and not a fraud or mistake *in the very matter* on which the judgment was entered or order made. Tucker v. Stewart, 121 Iowa [714] 716 [97 N. W. 148]; Graves v. Graves, 132 Iowa 199 [109 N. W. 707, 10 L. R. A., N. S., 216, 10 Ann. Cas. 1104]; United States v. Throckmorton, 98 U. S. 61 (25 L. Ed. 93)." (Italics ours.)

In the case of Murphy v. Hahn, 208 Iowa 698, 707, 223 N. W. 756, 761, we state:

"Everything which *might have been litigated* as incidental or essentially connected with this subject-matter (the money in the hands of the administrator) must be regarded as *disposed of* by the final order of discharge. Tucker v. Stewart, 121 Iowa 714 [97 N. W. 148]; Bradbury v. Wells, supra; Conrad v. Hopkins, 195 Iowa 1162 [193 N. W. 437]. While it is true that fraud may vitiate a final settlement of an estate, yet the fraud that will vitiate it must be extrinsic or collateral to the matter directly involved in the final settlement or adjudication. United States v. Throckmorton, 98 U. S. 61, 65; Bradbury v. Wells, supra; Tucker v. Stewart, supra; Conrad v. Hopkins, supra; Hewitt v. Blaise, 202 Iowa 1114 [211 N. W. 481]; Pico v. Cohn, 91 Cal. 129 (25 Am. St. 159) [25 P. 970, 27 P. 537, 13 L. R. A. 336]; Croghan v. Umplebaugh, 179 Iowa 1187 [162 N. W. 596]; Sudbury v. Sudbury, 179 Iowa 1039 [162 N. W. 209]; Aschan v. McDermott, 164 Iowa 750 [145 N. W. 524]; Sullivan v. Herrick, 161 Iowa 148 [140 N. W. 359]; Guth v. Bell, 153 Iowa 511 [133 N. W. 883, 42 L. R. A. (N. S.) 692, Ann. Cas. 1913E 142]; Mengel v. Mengel, 145 Iowa 737 [120 N. W. 72, 122 N. W. 899]; Kwentsky v. Sirovy, 142 Iowa 385 [121 N. W. 27]; Richards v. Moran, 137 Iowa 220 [114 N. W. 1035]; Tollefson v. Tollefson, 137 Iowa 151 [114 N. W. 631]; Graves v. Graves, 132 Iowa 199 [109 N. W. 707, 10 L. R. A. (N. S.) 216, 10 Ann. Cas. 1104]." (Italics ours.)

In the last case quoted from, the action was in equity to require the defendants to make an accounting of certain property which should have been reported in an estate, but was not. In disposing of the case, we state, at page 708 of 208 Iowa, 223 N. W., at page 762, as follows:

"Under the record in this case, it is manifest that the final settlement and discharge of the brother, as administrator, constituted an *adjudication;* that the appellants had a trial, or were in no way prevented from having a trial, as to who and in what proportions they were entitled to the money in the hands of the administrator, *as shown by his inventory and final report;* and that the facts upon which the appellants are now relying as constituting fraud are *not* extrinsic or collateral fraud, but fraud intrinsic in character, and such as *inheres* in the *adjudication* rendered in the *order of discharge.* William J. Hahn, as an officer of the court, which had full and complete jurisdic-

tion, has accounted for all of the money in his hands as such officer, and as per the order of the court. Since he has so accounted, and since the appellants have not shown any extrinsic or collateral fraud which will vitiate the adjudication, said adjudication is final. If, under the record, the adjudication could be set aside, then, indeed, judgments of courts of record avail little or nothing.'' (Italics ours.)

Another case which is quite similar is that of Tucker v. Stewart, 121 Iowa 714, 718, 97 N. W. 148, 149, wherein an effort was made to compel an administrator to account for interest which should have been included in his final report, but was not. We state:

''Now this interest charge is only incidental to the accounting of the moneys of the estate—an increase of the funds themselves—and, when the final report shows how long these have been in the hands of the administrator, those interested in the estate are advised of facts which, followed up, would inevitably lead to the discovery whether any liability therefor had attached. If, notwithstanding this, they *consent* to his discharge, it would seem such consent ought to be deemed a waiver of all claim to such increment. In such a case it is *incidental* to, and connected with, the very items with which the administrator is charged, and hence must be regarded as *adjudicated*. If this were not the rule, there would be no stability in final settlements, as they might be set aside on the subsequent discovery that the officer, in handling the moneys, had derived from the use of any item some benefit not expressly stated in the account.'' (Italics ours.)

It seems to us and we hold that the adjudication in the probate proceedings was that *all property* belonging to the estate in the hands of the executors had been properly administered *pursuant to the orders* of the probate court. The contentions now made by plaintiff herein are *directly opposed* to such adjudication. For plaintiff to assert such contentions it was necessary to attack the adjudication on the basis of fraud or mistake. This was not done. Accordingly, we hold that the trial court correctly decided that the plaintiff failed to present to the court any equitable grounds for relief, and that the petition of the plaintiff was properly dismissed. The decree is affirmed.—Affirmed.

876

HAMILTON, C. J., and OLIVER, HALE, and MITCHELL, JJ., concur.

RICHARDS, J. (dissenting)—My reasons for dissenting from the majority opinion may be skeletonized as follows: Plaintiff's contentions were that defendant owed the note in suit to plaintiff and defendant, the sole beneficiaries of the estate. The majority opinion says, "For plaintiff to assert such contentions it was necessary to attack the adjudication on the basis of fraud or mistake." The "adjudication" was the probate order approving the final report. As their reason for laying down what is quoted above the majority say that plaintiff's contentions were directly opposed to the "adjudication," that is, directly opposed to the probate order. Seemingly, in saying this the majority misconceives what issues and matters the probate order adjudicated. It was entered in a hearing in which the adverse parties were on the one side the executors, on the other side the beneficiaries of the estate. The only adverse interests involved were those existing between the executors as executors and the beneficiaries as beneficiaries. No issue was before the court as to which the executors and the defendant debtor of the estate were adverse parties. There was nothing asked by any party to have adjudicated respecting defendant's liability to the estate or to the beneficiaries then holding the note he owed. Yet the majority has it in mind that in the order it was adjudicated that defendant was not liable after the order was entered. What the majority by implication puts into the order would have expressly appeared, instead of impliedly, had the probate court written into the order a provision to the effect that from and after entry of the order defendant's liability shall cease on any note or mortgage owing the estate that may have been turned over in kind to the beneficiaries. Possibly the majority might admit there was no issue before the court that would have warranted the court in expressly so adjudging. Nevertheless the opinion interpolates such a provision into the decree, inferentially. I fail to see any earmarks of reasonableness in the accomplishment. The decretal portion of the order was that the estate had been fully administered. This determined all issues that were before the court, and accorded with the facts. The debts and any specific legacies had been paid and the remaining

assets were in the hands of the proper beneficiaries including the note and mortgage that they had taken over in kind. This taking over was a proper incident to the closing of the estate. No court order was essential in the sense that there were any adverse interests to be determined by an order. At most an order would have been but a recordation of the beneficiaries' election to take the assets in kind. The beneficiaries' respective shares in the note and mortgage vested in them instanter upon the death of the testator. It is the mere legal title that passes to the executor and distribution by him gives the beneficiaries no new title. It only ascertains the property to which the title attaches. Christie v. C. R. I. & P. Ry. Co., 104 Iowa 707, 74 N. W. 697. The agreement of division of the note and mortgage between the beneficiaries was valid. Douglas v. Albrecht, 130 Iowa 132, 106 N. W. 354. The beneficiaries having so agreed the executors had no further right to administer upon the note and mortgage. Their right to make claim thereon being non-existent the executors could not have made an issue, on the hearing, against defendant with respect to the note. Heinz v. Vawter, 221 Iowa 714, 266 N. W. 486. That the probate order adjudicated nothing more than that the estate had been fully administered is made clear if one envisions what would have been the reforming in equity, mentioned as a sine qua non by the majority. The complaint would have been that the final report and order in probate had omitted mentioning that in closing the estate a portion of the assets had been turned over in kind to the beneficiaries. In event the equity court had not refused to act at all because of the immateriality of the thing complained of, the most it could have done would have been to incumber the record by inserting the incidental fact set out in the complaint. But after being inserted that fact would in no manner affect the order as originally made. It would still remain and be the same adjudication upon the one question before the court, whether the estate had been fully administered. After such reforming the relative rights of plaintiff and defendant in the instant case would have been the same as they were on the trial that was had. Being unable to sense that the opinion rests on a sound proposition of law, I would reverse the judgment that was ordered against plaintiff.

SAGER, J., concurs in the foregoing dissent.

STIGER, J. (dissenting)—I dissent. Defendant, John C. Joor, admits in his answer that "if such note and mortgage were or are in existence they were the property of P. Joor at the time of his death" and he would be a joint owner with plaintiff under the will of decedent. Defendant did not plead payment. On the issue of the existence of the note and its possession by defendant, plaintiff testified:

"I had a conversation concerning the note and mortgage *in this suit* with John C. Joor (the defendant) on the street in Maxwell, Iowa, in the fall of 1932 shortly after the bank closed. I told him he would have to take care of it, have to pay it. He said he expected to. The next time I talked to him about the note was in the fall in 1934. I asked him for the note. He said he thought he had it in the house. He went in after it. He came out after a little bit and said he couldn't find it but he knew it was in existence; that it was probably up in the bank.

"Q. Who did he say had it? A. He said he had had it.

"Q. What did he say about it; what did he say, if anything about its being paid? A. Well, he said it had never been paid; never been settled.

"The defendant and I were not interested in any other mortgage save the mortgage I have talked about, and that is the mortgage offered in evidence in this case.

"I asked him to file it but it wasn't done; I asked him a couple of times." (Italics supplied.)

Shortly after the conversation had in 1932, the defendant, on December 20, 1932, wrote plaintiff a letter in which he stated:

"One thing is certain, that mortgage I gave must not show up at this time. It would mean utter and complete ruin for me if it did."

Plaintiff introduced the chattel mortgage signed by defendant which described and acknowledged a $4,500 debt, $3,000 of the debt consisting of "one note for $3,000 dated February 4, 1928 due on demand."

Defendant did not offer any evidence in the case. The failure of the defendant to testify gives rise to the inference

that if he had testified his contention would not have been aided by his testimony.

The undisputed evidence and admissions of defendants in their answer established beyond any possible doubt the "existence" of the note and mortgage and that on the death of Mr. Joor, defendant, as co-executor, had possession of the note and mortgage as estate property and after the estate was closed his possession was that of a joint owner with plaintiff.

The note and mortgage were not listed in the inventory as an asset of the estate. This omission was apparently at the request of defendant and with consent of his brother, the plaintiff. There is no evidence that the failure to inventory the note and mortgage constituted a fraud on the creditors of the estate or the parties. All debts of the estate were paid. Though this property was not inventoried, nevertheless, it at all times was an asset of the estate and was the property of plaintiff and defendant under the will of decedent.

When the co-executors stated in their final report that "all property belonging to said estate, and which has come into their hands as executors, has been disposed of as directed by the court" each of them knew the note and mortgage were property belonging to the estate which had come into the hands of John C. Joor. The order on final report merely found that "said report is true and correct and the same is hereby approved, the executors discharged and bond exonerated." The execution of the inventory and final report was the mutual act of the co-executors, each having full knowledge of the facts, both executors stating that they had distributed all property belonging to the estate to the proper parties (plaintiff and defendant) and the present possession by defendant of the note and mortgage must be referable to the distribution made by the co-executors. The final report amounts to a joint declaration that the note and mortgage were distributed under the provisions of the will pursuant to the order of court.

It is true, as contended by appellee, that, as a general rule, a final order of discharge of an executor is conclusive of controversies adjudicated by the order against interested parties in the absence of fraud, duress, mistake or other grounds for equitable relief which do not inhere in the order of discharge. Estate of Holman, 216 Iowa 1186, 250 N. W. 498, 93 A. L. R.

1363; Murphy v. Hahn, 208 Iowa 698, 223 N. W. 756; Bradbury v. Wells, 138 Iowa 673, 115 N. W. 880, 16 L. R. A., N. S., 240; Tucker v. Stewart, 121 Iowa 714, 97 N. W. 148.

I am of the opinion that this rule is not applicable to these former co-executors who were joint owners of the note and mortgage. There is no suggestion in the record that either of the brothers, as executors or sole beneficiaries, committed fraud against the other or creditors during the administration of the estate. Plaintiff is not seeking to correct mistakes in the final report under Code Section 12049. He relies on the final report and claims he is the owner of an undivided one-half interest in the note and mortgage through the probate proceedings on the will of his father, P. Joor. He would be bound by the order of final discharge if the issues presented here were or might have been litigated as incidental to the distribution of the estate. It does not appear that there was any misunderstanding or controversy between them over their respective rights in the note and mortgage during the period of administration. Defendant did not claim in the probate proceedings that he was not liable on the note and mortgage. Plaintiff had no reason to suspect that defendant was disclaiming liability during the administration of the estate. On the contrary, defendant joined with plaintiff in stating in the final report that full distribution of all property had been made pursuant to the terms of the will of decedent. He now claims that his note and mortgage did not constitute property belonging to the estate. This litigation was commenced when plaintiff first discovered after closing the estate that defendant was repudiating his obligation. Obviously, the order of final discharge did not adjudicate a controversy between plaintiff and defendant that did not exist.

The majority opinion holds that the issues in this case were or might have been litigated in the probate proceedings, citing Murphy v. Hahn, 208 Iowa 698, 223 N. W. 756.

In the Murphy case the heirs filed objections to the final report of the administrator. The issue was, Who was entitled to the money in the hands of the administrator? The court states:

"Under the record in this case, it is manifest that the final settlement and discharge of the brother, as administrator, constituted an adjudication; that the appellants had a trial, or

were in no way prevented from having a trial, as to who and in what proportions they were entitled to the money in the hands of the administrator, as shown by his inventory and final report;'' etc.

In the instant case there was no litigation between the beneficiaries under the will and the executors to determine the liability of the defendant to the plaintiff on this note and mortgage. The beneficiaries, plaintiff and defendant, acknowledged that they had received distribution of the personal property belonging to the estate from the co-executors. Plaintiff could not anticipate in the probate proceedings that defendant would repudiate the debt after the estate was closed.

The majority opinion is inaccurate in stating that plaintiff claims that the final report, which the court found was true and correct, is neither true nor correct. The report does not refer to any specific item of property belonging to the estate. It simply states, and the court found, that *all property* belonging to the estate not just the property inventoried had been properly distributed. Plaintiff's position is that the report is correct, that the note and mortgage were, in the distribution, delivered to the defendant and are now in his possession as joint owner and his right to a decree rests on the will and probate proceedings.

The holding of the majority opinion that the note and mortgage were not assets of the estate because they were not listed in the inventory, and, as the final report recited that all property of the estate had been distributed to the legatees and the final report approved, plaintiff should have attacked the final report under Section 12049 on the ground of fraud and mistake (although there is no claim or evidence of fraud or mistake and the liability of defendant on the note and mortgage, which is the issue in this case, was not adjudicated in the probate proceedings) is erroneous. Defendant had possession of the note and mortgage from the time of his father's death but for some reason did not want these assets listed in the probate proceedings.

Defendant has not proved one element of estoppel against plaintiff.

I would reverse and remand for a decree for plaintiff.

BLISS, J., concurs in this dissent.