IN RE ESTATE OF THOMAS WEIDMAN.

No. 39838.

JANUARY 14, 1930.

*R. S. Milner* and *Paul V. Wilson,* for appellant.

*Paul W. Richards,* for heirs of Thomas Weidman, appellees.

*Clifford Powell,* for William Peterson, administrator, appellee.

FAVILLE, J.—The decedent, Thomas Weidman, died testate in 1921, leaving surviving him the applicant, his widow, and a large family of children, who are appellees herein. Appellant and Weidman were married in 1911. Prior to  said marriage, an antenuptial contract was entered into between them, which provided that, at the death of Weidman, the appellant should receive the sum of $16 per month as long as she lived. The value of the personal estate of Weidman was about $40,000. The day following the funeral of Weidman, the appellant was interviewed by a lawyer in regard to the administration of the estate, and appellant consented that one Peterson should be appointed administrator, and signed a petition for his appointment. The evidence of the appellant tends to show that thereafter, on various occasions, appellant made complaint to the administrator and the said attorney that she desired more money to live on, and was advised by the attorney that she was bound by the terms of the antenuptial contract, and could not secure a widow's allowance from the estate. It appears that the appellant did not secure any other legal advice until about June of 1923. About a year after the death of Weidman, to wit, on August 29, 1922, the appellant signed a waiver of notice of the filing of final report of the administrator. Said notice was in the usual form, stating that the final report was then on file, and that it would come on for hearing on the 24th day of October, 1922. The final report referred to recited that all just claims, debts, and charges against said estate had been fully paid and satisfied. On the 30th day of October, 1922, the final report came on for hearing, and the court made the following order:

"That the said estate be closed for all purposes except the collection of the three notes which are the property of the estate and the interest thereon, the payment of the monthly allowance to Ellen Weidman, and the final distribution according to the shares set forth in the supplement to the final report filed 29 Sept., 1922; and it is further ordered that Wm. Peterson be discharged as administrator, but that he be continued as trustee for the purposes above mentioned."

In 1923, the appellant instituted an action for the purpose

of recovering her distributive share in the estate of said decedent. She was defeated in this action, and appealed to this court, where the judgment of the trial court was affirmed. *Weidman v. Money*, 205 Iowa 1062. Shortly after the decision of said cause in this court, to wit, in the spring of 1928, the appellant instituted the instant proceeding for widow's allowance. The record shows that, from the time of the death of the decedent until the time said application was submitted, there was no substantial change in the value or status of the personal estate of said decedent. The trial court found that, had the applicant filed her application prior to the order approving said final report, she would have been legally entitled to an allowance in the sum of $150 per month for support as widow of the decedent, following the year of his death. The court held that the application for allowance was too late, and that the order approving the final report on October 30, 1922, was a full and complete adjudication of the rights of the widow, and that the same could not be set aside, in the absence of fraud or mistake, and that neither fraud nor mistake had been established.

I. Appellant contends that, under the order of the court of October 30, 1922, the estate was not closed, because something further was required to be done, in the collection of notes, the payment of the monthly allowance to appellant, and final distribution. The order of the court in terms states that said estate was closed for all purposes except the three matters just referred to, and directed that the administrator be discharged, and that he be continued as trustee for the purposes above mentioned. We had occasion to consider this order in the case of *Weidman v. Money*, 205 Iowa 1062, and therein we said:

"Due personal service of such final report and of the administrator's application for a discharge was accepted by all the beneficiaries of the estate, including the plaintiff herein. On October 30, 1922, such final report was approved, and the administrator was discharged. A trustee was appointed, to hold sufficient of the funds of the estate to provide for the annuity to the plaintiff. The trustee appointed was Peterson, the former administrator. He has functioned as a trustee since the date of his appointment, and has in his hands abundant funds for the protection of the annuity obligation to the plaintiff. * * * It is

well settled in this state that a final order in probate, entered on due notice to the beneficiaries, is a final adjudication. We so held in *Ryan v. Hutchinson,* 161 Iowa 575, and in *Aschan v. McDermott,* 164 Iowa 750. See, also, *Tucker v. Stewart,* 121 Iowa 714, 716; *Graves v. Graves,* 132 Iowa 199; *Bradbury v. Wells,* 138 Iowa 673.''

The statute contemplates a definite and certain time when estates in probate shall be finally closed. The order in the instant case was a final closing of said estate, and it was not open and pending when appellant's application was filed.

II. It is contended that appellant's application must, in any event, be inaugurated by an action in equity, and not by proceedings in probate.

Section 12049, Code, 1927, is as follows:

''Mistakes in settlements may be corrected in the probate court at any time before his final settlement and discharge, and after that time by equitable proceedings, on showing such grounds as will justify the interference of the court.''

Said section clearly contemplates an action *after* final settlement and discharge by equitable proceedings. The instant application was entitled as in the original probate proceedings.  No question as to the forum was raised in the lower court. It cannot be raised for the first time on appeal. *In re Estate of Heaver,* 168 Iowa 563, 567, and cases cited therein. It follows that we may consider the case upon its merits, even though it was not brought in equity, as the statute contemplates.

In *In re Estate of Heaver,* 168 Iowa 563, we said:

''All proceedings, whether probate, equity, or law, are before the same court. *Tucker v. Stewart,* 121 Iowa 714; *Goodnow v. Wells,* 67 Iowa 654. Forms of action only differ, and these are not controlling. They are adopted for purposes of efficiency in, and not as a clog to, the administration of justice. The remedy to which either party is entitled may be awarded in utter disregard of the place on the calendar. The cause may be docketed, whether with the actions at law, suits in equity, or with the estates in probate, unless objection is raised in the manner pre-

scribed by statute. Secs. 3432, 3433, 3434, Code. In the absence of any motion to transfer to the proper place, the parties are presumed to assent to the trial of the cause where instituted, and cannot thereafter be heard to complain on this ground. *Smith v. Haas,* 132 Iowa 493; *In re Estate of Douglas,* 140 Iowa 603; *Campbell v. Collins,* 152 Iowa 608.''

III. There is no proof of any fraud in the case. The statute, Code Section 12049, provides that this proceeding may be had for the purpose of correcting mistakes that have occurred  in the administration of the estate even after it has been closed. Do the facts in the instant case show such a mistake as entitles the appellant to equitable relief after the estate has been closed in a proper manner? The widow conferred with the attorney for the estate in regard to her rights therein, in view of the antenuptial contract. She was advised by him that, because of such contract, she was not entitled to any widow's allowance. The attorney for the estate testified, in part, as follows:

''I told her [appellant] that, in my opinion, the antenuptial contract which she had signed was a valid and legal obligation, and that, so far as the administrator was concerned, that I had advised him not to pay any more than that, and that I didn't see how she could get any more than that amount. I think I told her that on several different occasions. * * * I had occasion to change my mind as to what the law in Iowa was on the subject when the case of *Veeder v. Veeder* [195 Iowa 587] came out. That was in March, 1923. * * * I told Mrs. Weidman that I didn't think, under the terms of this contract, she was receiving what was her share in the estate, but I did tell her that it had been voluntarily entered into by her, and that other contracts of similar nature had been held valid; that it was my opinion all she could get was what the contract provided. I told her further that, so far as I could, I would be glad to speak to the other heirs of the estate, and see if they wouldn't voluntarily make some kind of a settlement.''

The appellant testified that she did not know anything about her right to a widow's allowance until October, 1926; that all

the information she had on that subject prior to said date she received from the administrator and the attorney for the estate.

Under the statute, Code Section 12049, the authority is conferred upon the court to correct "mistakes in settlements" *after* discharge of an administrator, by equitable proceedings, "on showing such grounds as will justify the interference of the court." The mistakes that may be so corrected are "mistakes in settlements." This obviously refers to mistakes in computations, or some other form of error that has been made in the "settlements" of the administrator. Were there any such mistakes in settlements in this case?

Clearly, the attorney for the administrator made a "mistake" in advising the appellant that she could not recover any widow's allowance, because of the antenuptial contract. But such a mistake of law on the part of an attorney is not a "mistake in settlements," within the contemplation of the statute.

Suppose a creditor of an estate was advised by the attorney for the administrator in good faith that the creditor's claim was barred by the statute of limitations, and, after due notice to the creditor, the estate should be finally closed. Could the creditor who afterwards discovered that his claim was not barred by law have the estate reopened under this statute, because of a "mistake in settlements?" We think not.

Does the fact that appellant sought the advice of the attorney for the estate, rather than another attorney, as she did later, avoid the mistake? Again we must say, "No." There was no "mistake in settlement" of the estate to be "corrected" as contemplated by the statute. The failure to award a widow's allowance was not a "mistake" in the settlement of the administrator's accounts and approval of his final report. A widow's allowance is a matter of statutory provision. Code, 1927, Sections 11923 and 11924. As a basis therefor, the statute contemplates a verified application, with certain requirements as to contents, and a determination of the necessity for such an allowance, and the amount thereof, if awarded. The appellant not only failed to make such application, but was duly notified of the final report of the administrator. Her "mistake" was the unfortunate one of placing reliance upon the advice of the attorney for the estate as to her legal rights; but, regrettable as it is, it is not

such a "mistake in settlement" as can be corrected by this proceeding after the estate is legally closed.

In *Becker v. Becker Bros.*, 202 Iowa 7, we said:

"It is likewise true that the final report of an executor which has been approved, and the executor discharged, will be set aside only upon a clear and satisfactory showing of fraud, mistake, or other equitable grounds therefor. *Patterson v. Bell*, 25 Iowa 149; *In re Estate of Douglas*, 140 Iowa 603; *Tucker v. Stewart*, 121 Iowa 714; *Read v. Howe*, 39 Iowa 553; *Daniels v. Smith*, 58 Iowa 577."

The record does not show "such grounds as will justify the interference of the court," as the statute requires.

It follows that the order of the trial court must be—*Affirmed*.

MORLING, C. J., and EVANS, ALBERT, and KINDIG, JJ., concur.